194 S.W.3d 667 (2006)
In the Interest of J.L.C., a Child.
No. 2-05-449-CV.
Court of Appeals of Texas, Fort Worth.
May 18, 2006.
*670 Dean M. Swanda, Swanda & Swanda, P.C., Arlington, for Appellant.
Tim Curry, Criminal District Atty., Charles M. Mallin, Asst. Criminal District Chief of the Appellate Section, Anne Swenson, David M. Curl and James Teel, Asst. Criminal District Attys., Fort Worth, for Appellee.
Panel F: HOLMAN, WALKER, and McCOY, JJ.

OPINION
DIXON W. HOLMAN, Justice.
This is an appeal from the termination of parental rights. Following a jury trial in November 2005, the trial court terminated the parental rights of Teresa C. in *671 her two-year-old daughter, J.L.C.[1] Teresa complains that the trial court erred in granting her request for an extension of the dismissal date deadline and that there is factually insufficient evidence to support the termination of her parental rights. We affirm.

FACTUAL BACKGROUND
Teresa C. is J.L.C.'s natural mother. Teresa C. began using cocaine when she was twenty-seven; she was forty-two at the time of trial. She testified that she has been addicted for most of her life. Teresa C. testified that when J.L.C. was born, Teresa C. was addicted to cocaine, and she and J.L.C. both tested positive for the presence of cocaine in their systems. Teresa C. admitted that she had used cocaine on October 22, 2003, the day that J.L.C. was born.
Teresa C. did not recall how many times she has been convicted, but she approximated her number of convictions to be around six. She believed she had been convicted three times since J.L.C. was born. Teresa C. had been arrested for prostitution, drug possession, criminal trespass, and driving while intoxicated, among other things.
On December 18, 2003, nearly two months following J.L.C.'s birth, Teresa C. was placed on probation for possession of cocaine and the trial court ordered her to complete the Nexxus Program, where she obtained inpatient drug rehabilitation treatment and learned about parenting skills. Teresa C. admitted that she used methamphetamine and cocaine during the time period between her completion of the inpatient treatment at Nexxus in March 2004 and the time of Texas Department of Family Protective Service's (TDPRS) removal of J.L.C. from her care on June 12, 2004.
On June 12, 2004, the child was removed from Teresa C.'s care due to the risk of exposure to drugs and the criminal activity associated with Teresa C.'s prostitution. On June 14, 2004, TDFPS filed an original petition for protection of a child, conservatorship, and for termination in a suit affecting the parent-child relationship. Despite the treatment that Teresa C. received from the Nexxus Program, she received a three-year sentence on September 20, 2004, for delivery of a controlled substance. She acknowledged that while her child was in the care of TDFPS, she used drugs, even after she had completed the intensive drug rehabilitation program offered by Nexxus.
After her release from Nexxus, Teresa C. was living with a man named Dennis, and Teresa C. acknowledged that while the child was in Dennis's care, she would leave to go do drugs. At the time that TDFPS removed J.L.C. from Teresa C.'s care, Teresa C. and the child were staying in a motel room with a girl who was a known prostitute.
Teresa C. was released from prison on October 15, 2005, and began living in a women and children's treatment center called the Lighthouse Program. She testified that she was in the first stage of the three-stage program, and her future plan was to live with her child at the treatment center. She is scheduled to remain on parole until July of 2007.
Teresa C. named Marion C., her second husband, as J.L.C.'s father because she was ashamed that she did not know the true father's identity. Teresa C. did not know at the time that she named Marion *672 C. as the father of J.L.C. that he was deceased.

EXTENSION OF DISMISSAL DEADLINE
In her first issue, Teresa C. contends that the trial court improperly extended the dismissal deadline because it made two mistakes in its oral rendition. Teresa C. argues that the trial court erred by failing to make a finding on the best interest of the child and by failing to enter further temporary orders. Due to these alleged errors, Teresa C. asserts that the trial court's May 9, 2005 order granting Teresa C.'s request for an extension and extending the dismissal deadline was invalid; thus, the trial court should have dismissed TDFPS's suit pursuant to family code section 263.401(a). See TEX. FAM.CODE ANN. § 263.401(a) (Vernon Supp.2005). TDFPS contends that Teresa C. should be estopped from making any complaint because she requested the court to grant an extension.
Section 263.401 of the family code provides that, unless the trial court has rendered a final order on the first Monday after the first anniversary of the date the court appointed TDFPS as temporary managing conservator in a suit affecting the parent-child relationship, the court "shall dismiss" a suit filed by TDFPS that seeks the termination of the parent-child relationship. Id. The version of the statute in effect at the time provides that the trial court may extend this deadline for up to 180 days if, by the Monday after the first anniversary date, the court finds that continuing TDFPS's conservatorship of the child is in the child's best interest and renders an order that complies with section 263.401(b). Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 8, 2001 Tex. Gen. Laws 2395, 2396 (amended 2005) (current version at TEX. FAM.CODE ANN. § 263.401(b) (Vernon Supp.2005)).
To render an order that complies with section 263.401(b), the trial court is required to schedule a new date for dismissal of the suit, make further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit, and set a final hearing on a date that allows the court to render a final order before the required date for dismissal of the suit. Id. If the trial court grants an extension, but does not render a final order within the 180-day period, it must dismiss the suit. Id. Section 263.401(b) simply requires the court to "render" an extension order. Id. It does not require that the order be written. In re B.T., 154 S.W.3d 200, 206 (Tex.App.-Fort Worth 2004, no pet.).
On June 14, 2004, TDFPS was named temporary managing conservator of J.L.C. On April 26, 2005, Teresa filed a motion for continuance and extension of dismissal date, asking the trial court to extend the dismissal date so that she could "complete Texas Department of Criminal Justice and Texas jail facility programs and be released before trial and obtain employment, obtain housing for herself and the child, and otherwise participate in [TDFPS] provided services." She also requested that the court grant the extension so that a home study could be completed before trial, so that any placement made in the home could be considered in the court's determination regarding best interests of the child and the termination of parental rights.
On May 9, 2005, the trial court held a hearing on Teresa C.'s motion to extend the dismissal deadline. At the hearing, the trial court orally granted the motion, extended the deadline until December 17, 2005, and set the trial date for October 19, 2005. Likewise, the trial court's docket *673 sheet entry shows that the motion was granted, extends the deadline until December 17, 2005, and sets the trial date for October 19, 2005.
On June 21, 2005, TDFPS filed a motion to enter judgment based upon the May 9, 2005 hearing. The trial court's docket sheet reflects that the trial court held a hearing on the motion on August 10, 2005. The court noted in the docket entry that arguments were heard, evidence was presented, and the matter was taken under advisement. At the August 10, 2005 hearing, the district attorney who represented TDFPS at the May 9, 2005 hearing testified that he did not recall whether a record was made of the May 9, 2005 hearing and he believed that the judge made a specific finding that the continuation of TDFPS as temporary managing conservator was in the child's best interest. The district attorney also testified that the trial court signed a formal order confirming the extension of the deadline, but the signed order was never filed with the clerk of the court because it was misplaced. Teresa's C.'s attorney also testified at the hearing, asserting that he had no recollection that the trial court made any specific findings or comments regarding the continuation of TDFPS as managing conservator as being in the best interest of the child. He thought that he had made an argument regarding the best interest of the child, but the trial court did not make a finding on best interest.
On August 15, 2005, the trial court signed an order extending the dismissal date, setting hearing dates, and finding that the appointment of TDFPS as temporary managing conservator continued to be in the best interest of the child. The order states that a hearing on Teresa C.'s motion for extension of the dismissal date was held on May 9, 2005, and on that day, "[t]he Court approved of [Teresa C.'s] requested relief and rendered it's [sic] decision, extending the dismissal date to December 17, 2005, and set the final trial date for a jury trial on October 19, 2005."
A party who requests the trial court to reset the trial date beyond the original one-year deadline set out in 263.401(a) has agreed to an extension under section 263.401(b). B.T., 154 S.W.3d at 206. Additionally, a party who requests relief cannot complain on appeal if that relief is granted. Northeast Tex. Motor Lines, Inc. v. Hodges, 138 Tex. 280, 158 S.W.2d 487, 488 (1942); Nesmith v. Berger, 64 S.W.3d 110, 119 (Tex. App-Austin 2001, pet. denied). Teresa C. filed a motion for continuance and extension of the dismissal date, requesting that the court extend the dismissal date so that she could "complete the Texas Department of Criminal Justice and Texas jail facility programs and be released before trial and obtain employment, obtain housing for herself and the child, and otherwise participate in [TDFPS] provided services." Because Teresa C. requested that the trial court grant the extension under 263.401(b), she agreed to the extension, and she cannot now complain on appeal because the relief she requested was granted. Accordingly, we overrule Teresa C.'s first issue.

BEST INTEREST OF THE CHILD
In her second issue, Teresa C. complains that the evidence is factually insufficient to show that termination was in the child's best interest.

1. Standard of Review
A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982); In re M.S., 115 *674 S.W.3d 534, 547 (Tex.2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to end them permanently  to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (Vernon Supp.2005); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. Holick, 685 S.W.2d at 20-21; In re E.S.S., 131 S.W.3d 632, 636 (Tex.App.-Fort Worth 2004, no pet.).
In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (Vernon 2002); In re J.L., 163 S.W.3d 79, 84 (Tex.2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).
Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex.2002). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. In re G.M., 596 S.W.2d 846, 847 (Tex.1980); In re K.W., 138 S.W.3d 420, 425 (Tex.App.-Fort Worth 2004, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 2002).
This higher burden of proof elevates the appellate standard of factual sufficiency review. C.H., 89 S.W.3d at 25. "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." C.H., 89 S.W.3d at 25. In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. Id. Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated one of the conduct provisions of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. Id. at 28.
The distinction between legal and factual sufficiency lies in how we review the evidence. J.F.C., 96 S.W.3d at 266. In a factual sufficiency review, in determining whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that its finding was true, we must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding. Id. If, in light of the entire *675 record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. Id.
Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include the following:
(1) the desires of the child;
(2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future;
(4) the parental abilities of the individuals seeking custody;
(5) the programs available to assist these individuals to promote the best interest of the child;
(6) the plans for the child by these individuals or by the agency seeking custody;
(7) the stability of the home or proposed placement;
(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(9) any excuse for the acts or omissions of the parent.
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases, and other factors not on the list may also be considered when appropriate. C.H., 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the children. Id. On the other hand, the presence of scant evidence relevant to each Holley factor will not support such a finding. Id.

2. The Desires of the Child
J.L.C. was two years old at the time the trial began on November 16, 2005. When she was born, J.L.C. tested positive for cocaine. J.L.C. began living with a foster family when she was eight months old. J.L.C.'s foster mother testified that J.L.C. has bonded with her foster family. According to the child advocate, J.L.C.'s foster family appears to offer a safe and loving environment in which the child is a happy, healthy, and thriving two-year-old girl who has bonded with her foster family, which includes a two-year-old foster brother. She calls her foster parents "mommy" and "daddy." J.L.C. has a room in her foster home that she calls her room. The child advocate stated that J.L.C. cries and reaches for her foster mother during her transition to TDFPS staff at the beginning of visits. The foster family would like to adopt J.L.C. J.L.C.'s foster mother testified that J.L.C. has no relationship with Teresa C., and Teresa C. is a stranger to J.L.C.

3. The Emotional and Physical Needs of the Child Now and in the Future
A psychologist who conducted a psychological examination of Teresa C. observed that her "past behaviors paint a picture of a woman who has had difficulty putting the needs of her child first due to her addiction to drugs."

4. The Emotional and Physical Danger to the Child Now and in the Future
The record shows that J.L.C. has been exposed to dangers associated with Teresa C.'s behavior. Teresa C. used drugs while she was pregnant with J.L.C., and J.L.C. tested positive for cocaine, methamphetamines, and barbituates at *676 birth. Teresa C. was arrested for prostitution on two occasions, and, although she testified that she did not know it at the time, she did leave the child in the care of a known prostitute. Furthermore, Teresa C. continued to use drugs after TDFPS removed J.L.C. from her care. The psychologist who conducted Teresa C.'s psychological examination stated that "[i]t is unclear to this examiner whether [Teresa C.] will be able to maintain her sobriety when she is not in a controlled environment, given that she has relapsed in the past."
Teresa C. testified that from 1990 to the present time, her main source of income was from dancing in topless clubs. She testified that the last time she had "legal" employment was in 1993, when she worked for a fast food restaurant. Although she was not employed at the time of trial and was not seeking employment at the time, she stated that she eventually planned to look for a data entry position. She had received data entry training while in jail. She testified that throughout her entire life, she has never had an apartment listed in her name and at points in her life, she has been homeless. The child advocate expressed that Teresa C. "has failed to prove her ability to establish or maintain a safe or stable home for her daughter when she has had many opportunities to do so."

5. The Parental Abilities of the Individuals Seeking Custody
The record establishes that Teresa C. has been involved in a life of crime, unemployment, homelessness, and drug addiction. She was attempting to overcome her drug addiction, and she attended parenting classes through drug rehabilitation programs. J.L.C. was Teresa C.'s first child. Following J.L.C.'s birth, Teresa C. continued to engage in drug use.

6. The Programs Available to Assist These Individuals to Promote the Best Interest of the Child
Teresa C. was involved in the Lighthouse program following her release from jail. Through this program, she attended parenting classes and a drug rehabilitation program. Additionally, Teresa C. testified she was interested in joining the Exodus program, a Christian-based program designed to help a mother and child to reenter society.

7. The Plans for the Child by These Individuals Seeking Custody
Teresa C.'s plan for the child was to extend her drug treatment program and then have the child live with her in a Christian house, Exodus, that helps a mother and her child to reenter society. Teresa C. planned to look for employment performing data entry work. TDFPS's plan for the child was to pursue termination of Teresa C.'s parental rights and adoption by the foster family.

8. The Stability of the Home or Proposed Placement
The record indicates that Teresa C. could not provide a stable home for J.L.C. She had never rented an apartment in her own name, and she had been homeless at various stages of her life. Additionally, the child advocate noted that Teresa C. "has failed to prove her ability to establish or maintain a safe or stable home for her daughter when she has had many opportunities to do so." A trial court can measure the future conduct of parents by their recent past conduct, and it is not required to believe that there has been a lasting change in a parent's attitude since his or her children were taken. In re K.A.S., 131 S.W.3d 215, 229-230 (Tex. App.-Fort Worth 2004, pet. denied).
The child was secure in her temporary placement with her foster family. While *677 in foster care, J.L.C. began to walk and talk, and she has bonded with her foster family. She calls her foster parents "mommy" and "daddy." J.L.C. has a room in her foster home that she calls her room. The child advocate explained that the foster family provided a safe and loving environment for J.L.C., and J.L.C. is happy and healthy. While in the foster home, J.L.C. attended daycare, but her foster mother has since left her job to be at home with J.L.C. and her foster brother. The foster parents expressed their desire to adopt J.L.C.

9. The Acts or Omissions of the Parent Which May Indicate that the Existing Parent-Child Relationship is Not a Proper One and Any Excuse for the Acts or Omissions of the Parent
By her own admission, Teresa C. is a long-term drug user. She acknowledged that the primary person who was hurt by her drug addiction was the child. She used drugs while she was pregnant with J.L.C. and after J.L.C.'s birth. Her excuse for her drug use was that she did not understand the concept of her addiction.

10. The Child's Best Interest
Based on the foregoing, we hold that a rational factfinder could reasonably form a firm conviction or belief that the termination of Teresa C.'s parental rights would be in the best interest of the child. Accordingly, we overrule Teresa C.'s second issue.

DISCUSSION
Having overruled each of Teresa C.'s two issues, we affirm the trial court's judgment.
NOTES
[1] To protect the privacy of the parties involved in this appeal, we identify the child by initials only and Appellant by first name and initial. See TEX. FAM.CODE ANN. § 109.002(d) (Vernon 2002).