# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-13-00374-CV

**B. D. H. and R. E. S., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

#### FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT
#### NO. 2011V-331, HONORABLE JEFF R. STEINHAUSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants B.D.H. ("Beth") and R.E.S. ("Robert") appeal from the trial court's order terminating their parental rights to their minor child, R.S.[1]  On appeal, Beth and Robert assert that the evidence is legally and factually insufficient to support the trial court's conclusion that termination of their parental rights was in R.S.'s best interest.  We affirm the trial court's order of termination.

## BACKGROUND

According to the trial court's findings of fact, which the appellants do not challenge, on November 21, 2011, law enforcement officers conducted a search of Beth's and Robert's home and found methamphetamines, "meth pipes," used needles, marijuana, and other drug paraphernalia

---

[1]  For the sake of convenience and privacy of the parties, we refer to the appellants by fictitious names.  *See* Tex. Fam. Code § 109.002(d).

throughout their home, including R.S.'s bedroom. R.S., who was two and one-half years old at the time, was nonverbal and had fifteen cavities in his sixteen teeth. The Texas Department of Family and Protective Services (the Department) immediately took possession of R.S. and filed an original petition for protection of R.S. Following an adversary hearing, the trial court entered a temporary order naming the Department as R.S.'s temporary managing conservator.

R.S.'s removal was not the Department's first involvement with Beth and Robert. In 2004, Beth's four children were removed from her custody after her two-year-old child accidently discharged a firearm in her home. During that time, Beth and her then-husband had a physically abusive relationship and both parents used drugs in front of their children. One of their children was subsequently diagnosed with post-traumatic stress disorder. Beth relinquished her rights to these children after she continued using narcotics during the pendency of that termination case. Beth subsequently gave up two other children for adoption because she was abusing narcotics and could not care for them.

When Beth was pregnant with R.S. in 2009, she was still using drugs. After R.S. was born, the Department offered—and Beth and Robert voluntarily accepted—family based social services, during which time R.S. was removed from their custody. These services included parenting classes, protective parenting classes, and participation in Narcotics Anonymous and Alcoholics Anonymous (AA). Beth and Robert completed these services, after which R.S. was returned to their home.

Following R.S.'s removal in this case, the Department created a family service plan through which Beth and Robert could work toward regaining custody of R.S. *See* Tex. Fam. Code § 263.106. Among other things, the service plans required that Beth and Robert complete inpatient

drug treatment programs, parenting classes, and random drug screens. Beth was also required to participate in mental health counseling and take her prescribed medication for her mental illness. Following their discharge from inpatient drug treatment, Beth and Robert were required to attend AA meetings.

During the first six months of this case, Beth and Robert failed to make any substantial progress in their family service plans. Beth completed only fourteen days of the thirty-day inpatient rehabilitation program and did not receive a certificate of completion from that program. She also did not participate in AA for two months after her discharge. Similarly, Robert was required to attend a ninety-day inpatient program but only attended a thirty-day program. Robert also did not begin attending AA for the first eight months of this case. Citing their history and failure to make progress in their family service plans, the Department changed its initial goal from reunification to termination of Beth's and Robert's parental rights.

The record indicates that after the Department informed Beth and Robert that it was seeking termination of their parental rights, both parents began participating in their required services. Beth and Robert requested and received a 180-day extension to complete their service plans. They regularly attended AA and completed their parenting classes. However, even with the 180-day extension, neither Beth nor Robert had completed their family service plans before the trial court's final hearing on the Department's petition to terminate their parental rights. Furthermore, Beth's counselor stated that Beth was not diligent in having her medications adjusted, and the counselor believed that Beth was no longer taking her medications.[2]

_____

[2] The counselor testified that adjusting the medications was important because previous prescriptions had made Beth suicidal, hostile, and even caused hallucinations.

At the final hearing, Beth and Robert testified about their recent progress and change in behavior. Both admitted that they were unfit parents when R.S. was originally taken into the Department's custody but insisted that they had changed and could provide a safe and loving home. However, Beth admitted that she still relied on her father—who repeatedly sexually abused her when she was a child—for support and was comfortable bringing him to visitation sessions with R.S. Beth also testified that she had completed her twelve-step program with AA, but her counselor testified that Beth was only on step eight. Similarly, Robert testified that he remained close with his family even though they had substantial alcohol and substance-abuse issues. He also admitted that everyone he associated with had a history with the Department or problems with alcohol and substance abuse.

The Department called eight additional witnesses, including Beth's counselor; the supervisor assigned to this case; the conservatorship worker assigned to appellants' family based social services case when R.S. was born; R.S.'s court appointed special advocate; and R.S.'s foster mother, who was seeking to adopt R.S. These witnesses testified about their interactions with the appellants, R.S., and R.S.'s foster family, and they all stated that termination of appellants' parental rights was in R.S.'s best interest. Appellants called two fellow AA members, both of whom attested to appellants' genuine participation in AA and the changes that appellants have achieved.

Following closing arguments, the trial court entered its order terminating Beth's and Robert's parental rights. Upon appellants' request, the trial court issued findings of fact and conclusions of law, which the appellants do not challenge on appeal.[3] In its findings, the trial court

---

[3] Although the appellants do not challenge any of the trial court's specific findings, they do challenge the sufficiency of the evidence to support the ultimate legal conclusion that termination of their parental rights was in R.S.'s best interest. *See Zagorski v. Zagorski*, 116 S.W.3d 309, 315 n.2 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) (rejecting argument that

4

found that Beth's and Robert's testimony about their rehabilitative efforts were "contradictory and unreliable," and that Beth's testimony "regarding her medication regime was contradictory and unreliable." By contrast, the trial court found that the Department's witnesses were credible and concluded that termination of appellants' rights was in R.S.'s best interest. This appeal followed.

## DISCUSSION

In their sole issue on appeal, Beth and Robert assert that the evidence is legally and factually insufficient to support the termination of their parental rights. Specifically, appellants argue that the Department's "decision to seek termination wholly ignored Appellants' parenting abilities" at the time of the final hearing, but instead was based solely on their previous behavior.[4] Thus, according to appellants, the evidence is insufficient to show that termination of their parental rights was in R.S.'s best interest.

To terminate the parent-child relationship, the fact-finder must find clear and convincing evidence that (1) the parent has engaged in conduct set out as statutory grounds for termination and (2) termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Appellants do not challenge the sufficiency of the evidence to support the trial court's

_____

appellant waived sufficiency challenge because he did not challenge specific findings of fact). Therefore, we consider whether the evidence is sufficient to terminate Beth's and Robert's parental rights under the legal standards discussed below. *See id.*; *see also In re A.W.*, No. 02-03-000349-CV, 2004 WL 1799893, at *2 (Tex. App.—Fort Worth Aug. 12, 2004, no pet.) (mem. op.).

[4] The appellants repeatedly criticize the Department's "unspoken" policy of determining whether it will seek to terminate a parent's rights based on the parent's conduct during the first six months after his child is placed in the Department's custody. However, the appellants do not raise this as a separate appellate issue and fail to explain how the Department's internal procedure for determining when it will recommend termination is relevant to the ultimate issue in this case—whether the evidence is sufficient to support the trial court's conclusion that terminating appellants' rights was in R.S.'s best interest.

finding that they engaged in conduct that constitutes a statutory ground for termination. *See* Tex. Fam. Code § 161.001(1)(D)–(E), (O)–(P). Therefore, we will consider only whether the evidence is sufficient to support the trial court's finding that termination of appellants' parental rights was in R.S.'s best interest.

*Standard of review*

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a termination case, we review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the trial court's determination and will uphold a finding if a reasonable factfinder could have formed a firm conviction that its finding was true. *Id.* To give appropriate deference to the trial court's conclusions, we defer to the court's resolution of disputed facts if the record reasonably supports those findings. *Id.* An appellate court should disregard evidence a reasonable factfinder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable factfinder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d at 18–19. We assume that the trial court resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable factfinder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable factfinder could not have resolved the disputed evidence in favor of its finding or if the disputed

6

evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction that its finding was true.

*Analysis*

In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). These factors include (1) the child's wishes, (2) his emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).

In this case, we acknowledge that appellants have completed most of the requirements of their family service plan and have expressed a desire to turn their lives around. We do not doubt that Beth and Robert love R.S. However, in considering the best interests of the child, "evidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of

instability and harmful behavior in the past." *See Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.).

The Department presented evidence that R.S. has bonded with his foster parents, that he refers to them as "mommy" and "pappi," and that R.S. is ready to return to his foster home after visiting Beth and Robert. Based on this evidence, the trial court could have reasonably found that R.S. preferred to remain with his foster family. *See In re J.L.C.*, 194 S.W.3d 667, 675 (Tex. App.—Fort Worth 2006, no pet.) (noting that toddler's affection and attachment to foster parents can be evidence of infant's desire to remain with foster family).

Furthermore, the Department introduced evidence that Beth and Robert intended to continue associating with individuals with substance abuse problems and histories of child endangerment—including Beth's father, who had sexually abused Beth when she was a teenager. Beth and Robert also admitted that they used to use narcotics together while they were alone with R.S., and Beth continued to deny that such behavior constituted child abuse. Finally, Beth testified that she would not seek employment because she was on medical disability for her mental condition, and Robert admitted that he had not been able to maintain stable employment in the past. Based on this evidence, the trial court could have reasonably concluded that appellants could not provide for R.S.'s physical and emotional well-being now and in the future, they were unable to protect R.S. from physical and emotional danger in the future, they could not provide a stable home, and they lacked the parenting skills necessary to care for R.S. *See In re C.H.*, 89 S.W.3d at 28 (noting that past endangerment may be probative of child's best interests now and in future); *Holley*, 544 S.W.2d at 371–72 (noting that courts may consider evidence relating to current and future emotional and physical needs of child).

8

Finally, the Department introduced evidence that Beth and Robert have taken parenting classes, have attended AA and other court-ordered drug-treatment programs, and have achieved temporary sobriety in the past. Despite these programs, however, Beth and Robert continued to use narcotics around R.S., initially failed to work toward completing their family service plan when R.S. was taken away, and still were not able to recognize and avoid triggers that could lead them to relapse. Based on this evidence, the trial court could have reasonably found that Beth and Robert would not take advantage of programs designed to assist them and that their repeated drug use and neglect of R.S. was inexcusable. *See Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 223 (Tex. App.—Austin 2013, no pet.) (noting that parent's participation in parenting programs may be discounted if it has not resulted in lasting improvements in parenting skills).

Considering this evidence in the light most favorable to the trial court's determination, we conclude that the trial court could reasonably have formed a firm belief that termination of appellants' parental rights was in R.S.'s best interests. Therefore, we hold that the evidence is legally sufficient to support the trial court's finding that appellants' parental rights should be terminated. Similarly, in considering the evidence in a neutral light, we determine that the trial court could reasonably have formed a firm belief or conviction that termination of appellants' parental rights was in R.S.'s best interests. Therefore, we hold that the evidence is also factually sufficient to support the trial court's finding that appellants' parental rights should be terminated. We overrule Beth's and Robert's sole issue on appeal.

## CONCLUSION

Having overruled appellants' sole issue on appeal, we affirm the trial court's order terminating appellants' parental rights.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: November 5, 2013