# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-13-00598-CV

Z. L., Appellant

v.

Texas Department of Family and Protective Services, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. D-1-FM-12-004314, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## MEMORANDUM OPINION

Appellant Z.L. ("Zane") appeals from the trial court's order terminating his parental rights to his minor child, A.L.[1] On appeal, Zane asserts that the evidence is insufficient to support the trial court's finding that (1) a statutory ground for terminating Zane's parental rights exists and (2) termination is in A.L.'s best interest. We affirm the judgment of the trial court.

## BACKGROUND

Appellee Texas Department of Family and Protective Services (the Department) became involved in this case at A.L.'s birth, when her mother "Teresa" tested positive for marijuana immediately after delivering A.L. Zane and Teresa were dating at the time, and they had been living together since they learned that Teresa was pregnant with A.L. Zane did not test positive for drugs at A.L.'s birth, but he later admitted to smoking marijuana around Teresa while she was pregnant.

---

[1] For the sake of convenience and privacy of the parties, we refer to A.L.'s parents and family members by fictitious names. *See* Tex. Fam. Code § 109.002(d).

According to Angela Diaz, the Department's supervisor who monitored this case, the Department concluded that it did not have enough evidence to remove A.L. at that time, and Zane and Teresa were allowed to take A.L. home. However, the Department found that there was reason to believe that Zane and Teresa were neglectfully supervising A.L. Therefore, the Department entered into a voluntary agreement with Zane and Teresa whereby both parents agreed that "Mary"—Teresa's mother—would supervise A.L.'s care at all times. Initially, Mary moved in with Zane and Teresa and supervised A.L.'s care in their home. However, according to Zane, he and Mary had "disputes" and "bumped heads," after which Mary cared for A.L. in her home.

Zane and Teresa's agreement with the Department also required them to complete various services—including couples counseling, protective parenting classes, and drug and alcohol treatment—to address the Department's concern for A.L.'s safety. According to Diaz, neither Zane nor Teresa completed any of these services. Zane would later admit that he did not complete any of these services because he was not under a court order to do so.

Five months after A.L. was born, the Department learned that Zane had been arrested for assaulting Teresa. Less than two months later, after being released for the domestic violence charge, Zane was arrested again for theft and burglary of a vehicle. A few days later, Teresa was arrested for theft and possession of a controlled substance. At that time, according to Diaz, the Department sought custody of A.L. based on the fact that both parents were incarcerated, both failed to make any progress in the Department's services, and the Department had "the new concern of domestic violence." Following an adversary hearing, the trial court entered an order naming the Department as A.L.'s temporary managing conservator.

2

After A.L.'s removal, the Department created a family service plan through which Zane could work toward regaining custody of A.L. *See* Tex. Fam. Code § 263.106. Among other things, the service plan required Zane to complete drug and alcohol counseling, submit to random drug testing, and follow all recommendations made after a "parent collaboration meeting." Zane later admitted that he failed to complete almost all of the requirements of his service plan. He explained that he worked long hours, had difficulty obtaining transportation, and spent a substantial amount of time resolving outstanding criminal charges—including a ninety-day period during which Zane was under house arrest.

The Department ultimately sought to terminate Zane's and Teresa's parental rights. Given that Mary had informed the Department that she no longer wished to take care of A.L., the Department sought to have A.L. adopted by Teresa's aunt and uncle in Nebraska. Teresa signed a mediated settlement agreement with the Department in which she voluntarily relinquished her parental rights.[2] Zane also entered into a mediated settlement agreement in which he agreed to waive his right to a jury trial. In exchange, the Department agreed to seek termination on the sole statutory ground that Zane failed to complete his family service plan. *See id.* § 161.001(1)(O).

At the final hearing, the Department called four witnesses; including Zane, Diaz, and two other Department employees who worked on this case. Zane testified that he was able to maintain steady employment and provide a good home for A.L. while she lived with him. However, Zane admitted that he continued to drink heavily and smoke marijuana since A.L.'s removal; that

---

[2] Following a brief "prove-up hearing," the trial court terminated Teresa's parental rights consistent with her mediated settlement agreement. Teresa did not appeal from the trial court's order terminating her parental rights.

3

he "would blow [drug screenings] off, you know, just because"; and that he failed to attend several of the court hearings relating to this case. Zane also admitted that he had been arrested and charged with several crimes since A.L.'s removal, that he was incarcerated for approximately 100 days on various charges during that time, and that he had been "on the run" from law enforcement for at least three months during these proceedings while seeking to avoid a new allegation of domestic violence from a recent ex-girlfriend.

Diaz testified about the Department's history with this case as outlined above. The other witnesses for the Department testified about A.L.'s adjustment to living with her maternal great aunt and uncle as foster parents. Both witnesses explained that the foster parents provide a safe and loving home for A.L. and that termination of Zane's parental rights was in A.L.'s best interest. Following the hearing, the trial court found by clear and convincing evidence that Zane had failed to comply with the requirements of his family service plan and that termination of Zane's parental rights was in A.L.'s best interest. *See id.* § 161.001(1)(O), (2) (prescribing necessary findings for termination of parental rights). This appeal followed.

## DISCUSSION

In two issues on appeal, Zane asserts that the evidence is insufficient to support termination of his parental rights. To terminate the parent-child relationship, the fact-finder must find clear and convincing evidence that (1) the parent has engaged in conduct set out as statutory grounds for termination and (2) termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). In his first appellate issue, Zane contends that the evidence is legally insufficient to support the trial court's finding that a statutory ground for termination exists because there is no

4

evidence that Zane was ordered to complete a family service plan based on allegations that he abused or neglected A.L. *See* Tex. Fam. Code § 161.001(1)(O). Second, Zane argues that the evidence is factually insufficient to support the trial court's finding that termination of his parental rights was in A.L.'s best interest. *See id.* § 161.001(2).

*Standard of review*

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a termination case, we review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the trial court's determination and will uphold a finding if a reasonable factfinder could have formed a firm conviction that its finding was true. *Id.* To give appropriate deference to the trial court's conclusions, we must assume that the court resolved disputed facts in favor of its finding if it could reasonably do so. *Id.* An appellate court should disregard evidence a reasonable factfinder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable factfinder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d at 18–19. We assume that the trial court resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable factfinder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable factfinder could not have resolved the disputed evidence in favor of its finding and if that disputed

evidence is so significant that the trial court could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

*Statutory ground for termination*

In his first appellate issue, Zane asserts that the evidence is legally insufficient to support the trial court's finding that a statutory ground for terminating his parental rights exists. Specifically, Zane argues that the family service plan he was ordered to complete was not in response to A.L.'s removal for abuse or neglect. Therefore, according to Zane, his failure to complete the family service plan does not satisfy the elements of section 161.001(1)(O) of the Texas Family Code, and thus there is no evidence that a statutory ground for termination exists.

The Department's only statutory ground for terminating Zane's parental rights was subsection O, which provides that a parent-child relationship may be terminated if the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal *from the parent under Chapter 262 for the abuse or neglect of the child*.

Tex. Fam. Code § 161.001(O) (emphasis added). The supreme court has recognized that it is an essential element of subsection O that the child was removed under Chapter 262 for abuse or neglect. *See In re E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013) (discussing broad meaning of abuse and neglect under Chapter 262). However, the court found that within the meaning of Chapter 262, abuse or neglect encompass both actual abuse or neglect and a substantial risk of abuse or neglect. *See id.*

6

at 246–47; *L.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, at *7 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (noting that whether removal was result of abuse or neglect is determined on case-by-case basis). Thus, under subsection O, the Department has the burden to establish that (1) Zane was ordered to comply with a family service plan as a result of A.L.'s removal for abuse or neglect and (2) Zane failed to comply with the requirements of the family service plan.

On appeal, Zane concedes that the evidence establishes that he did not comply with the requirements of the family service plan. However, Zane contends that when the Department sought temporary managing conservatorship of A.L., she was living with and continued to live with Mary, whom the Department had previously determined was a suitable care giver. Therefore, according to Zane, there is no evidence that A.L. was removed due to a substantial risk of abuse or neglect.

Although A.L. was staying with someone other than Zane at the time the Department filed its petition for temporary conservatorship, for purposes of section 161.001(1)(O), A.L. was removed from Zane's custody by the trial court's order naming the Department A.L.'s temporary managing conservator. *See D.F. v. Texas Dep't of Family & Protective Servs.*, 393 S.W.3d 821, 830 (Tex. App.—El Paso 2012, no pet.) (concluding that child was removed from parent for purposes of section 161.001(1)(O) of the Family Code even though at time of removal child was living in Child Crisis Center), *abrogated on other grounds by E.C.R.*, 402 S.W.3d at 246 n.5; *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (concluding child was removed from parent's care even though child technically removed from shelter), *abrogated on*

7

*other grounds by E.C.R.*, 402 S.W.3d at 246 n.5.  Similarly, the fact that A.L. had somewhere safe to stay after both her parents were incarcerated does not preclude the possibility that Zane was neglecting his child.  As the statutory examples make clear, neglect can occur when a parent fails to provide a safe home for the child to return to after the child has "been in residential placement or . . . run away."  *See* Tex. Fam. Code § 261.001(4)(C); *see also E.C.R.*, 402 S.W.3d at 246–47 (explaining that Chapter 261's definitions of abuse and neglect inform what constitutes abuse and neglect for purposes of Chapter 262).  Thus, a parent can neglect his children even when the children do not live with him.

At the final hearing, the trial court took judicial notice of the order naming the Department as sole managing conservator and subsequent order compelling Zane to complete the family service plan.  Although these orders are not proof that the allegations contained within them are in fact true, the orders are evidence of why A.L. was removed.  *See L.Z.*, 2012 WL 3629435, at *8 (noting that family service plan admitted at trial verified that child was removed for allegations of abuse and neglect).  These orders specifically state that they were being issued pursuant to Chapter 262 of the Texas Family Code based on the Department's allegations that neither parent could provide for the safety and well-being of A.L., that neither parent was taking advantage of any of the services the Department recommended, and that both parents were incarcerated for recent criminal charges.  Furthermore, Diaz testified that the Department sought to remove of A.L. after learning that Zane smoked marijuana around Teresa while she was pregnant, that Zane and Teresa were overwhelmed when they tried to take care of A.L., and that Zane had been arrested for allegedly punching Teresa multiple times in the face.

These allegations coincide with statutory examples of neglect, including "failure by the person responsible for a child's care, custody, or welfare to permit the child to return to the child's home without arranging for the necessary care for the child after the child has been absent from home for any reason . . . ." Tex. Fam. Code § 261.001(4)(C). Therefore, we conclude that the preliminary order naming the Department as temporary managing conservator and Diaz's corroborating testimony were sufficient evidence from which the trial court could find that Zane was ordered to comply with a family service plan as a result of A.L.'s removal under Chapter 262 for neglect. *See id.* § 161.001(1)(O); *see also L.Z.*, 2012 WL 3629435, at *8. Zane concedes that the evidence is sufficient to demonstrate that he did not comply with the provisions of that family service plan. Thus, the trial court could have formed a firm belief or conviction that subsection O is a statutory ground that supports terminating Zane's parental rights. *See* Tex. Fam. Code § 161.001(1)(O); *see also In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (noting that only one statutory ground for termination is necessary to support termination of parental rights). We conclude that there is legally sufficient evidence to support the trial court's finding on this issue. Zane's first appellate issue is overruled.

*A.L.'s best interest*

In his second issue on appeal, Zane asserts that the evidence is factually insufficient to support the trial court's finding that termination of his parental rights was in A.L.'s best interest. In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). These factors include (1) the child's wishes, (2) his emotional and physical needs now and in the future, (3) emotional or physical

9

danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the fact-finder from finding that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved on other grounds in In re J.F.C.*, 96 S.W.3d at 267 n.39; *see also Rios v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00565-CV, 2012 WL 2989237, at *8 (Tex. App.—Austin July 11, 2012, no pet.) (mem. op.).

On appeal, Zane does not point to any particular *Holley* factor that he claims weighs against the trial court's best-interest finding. Rather, Zane merely notes that there is a strong presumption that preserving the parent-child relationship is in the child's best interest and that a parent's right to his child is constitutionally protected. *See In re R.R.*, 209 S.W.3d at 116. As Zane's brief acknowledges, these fundamental concerns are the reason that the Department must prove its case by clear and convincing evidence, and therefore Zane's brief does not purport to alter the traditional *Holley*-factors analysis. *See id.* (noting that presumption that it is in child's best interest to remain with parent is part of *Holley* analysis).

10

The trial court heard substantial testimony about A.L.'s best interest. In his testimony, Zane admitted that he continued to abuse drugs and alcohol, that he would "blow off" the requirements of his family service plan for no reason, that he had been incarcerated for approximately 100 days for various criminal charges since A.L.'s removal, and that he had been "on the run" from law enforcement for three months while avoiding an outstanding domestic violence complaint. Based on this testimony, the trial court could have reasonably found that Zane could not provide for the present and future needs of A.L., Zane would not take advantage of programs designed to assist him in raising A.L., Zane could not provide a safe and stable home for A.L., and Zane had no reasonable excuse for his prior mistakes. *See Holley*, 544 S.W.2d at 372; *Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.).

By contrast, the trial court also heard testimony that A.L.'s foster parents were seeking to adopt her, that they provided a safe and loving home, and that A.L. had adjusted well to living with her foster parents. Based on this testimony, the trial court could have reasonably found that A.L.'s foster parents could provide a safe and stable environment for A.L. now and in the future and that A.L. had some preference for staying with her foster parents. *See In re J.L.C.*, 194 S.W.3d 667, 675 (Tex. App.—Fort Worth 2006, no pet.) (noting that toddler's affection and attachment to foster parents can be evidence of infant's desire to remain with foster family).

Based on this record, we conclude that a reasonable factfinder could have resolved the evidence in favor of the trial court's best-interest finding and that the disputed evidence is not so significant as to prevent a reasonable factfinder from forming a firm belief or conviction that the finding was true. Therefore, the evidence is factually sufficient to support the trial court's best-interest finding. *See J.F.C.*, 96 S.W.3d at 266. We overrule Zane's second appellate issue.

11

# CONCLUSION

Having overruled Zane's two issues on appeal, we affirm the trial court's order terminating Zane's parental rights.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: February 7, 2014